UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                               :

MANUEL A. TRINIDAD, et al.,              :

                              :            12 Civ. 6094 (PAE)
                   Plaintiffs,       :

          –v–                   :          OPINION & ORDER
                              :

PRET A MANGER (USA) LIMITED, et al.,   :

                              :
                   Defendants.     :

                              :
------------------------------------------------------------------------X

**PAUL A. ENGELMAYER, District Judge:**

       Manuel Trinidad brings this action on behalf of himself and similarly situated persons,

alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New

York Labor Law ("NYLL") §§ 191 *et seq.*  Trinidad alleges that a number of stores owned by

Pret A Manger (USA) Limited ("Pret") in New York City maintained unlawful employment

practices, involving failure to adequately compensate employees for off-the-clock and overtime

work, and violations of tip-pooling regulations.

       Plaintiffs move for conditional certification of a class under the FLSA, and court-

facilitated notice to all non-exempt Pret "Team Members" employed by Pret in New York City

stores during the last six years.  Pret opposes that motion, and moves to strike declarations filed

by four plaintiffs.  For the reasons that follow, the Court (1) denies Pret's motion to strike; (2)

grants conditional certification for plaintiffs' claims of overtime violations, limited to six Pret

locations in New York City, but denies certification based on allegations of non-overtime off-

the-clock work and alleged tip-pooling violations; and (3) approves court-facilitated notice for

the six Pret locations by means of certified mail to prospective class members and non-public

posting of notice in the designated Pret locations.

I.     **Background**[1]

A.     **Factual Allegations**

Pret is a foreign corporation with 33 stores in New York City,[2] as well as locations in several other U.S. cities.  All New York stores are wholly-owned subsidiaries of the parent corporation.  Am. Compl.  ¶¶ 6–8.

To date, five Plaintiffs have opted in to this action:  Manuel Trinidad, Janckell Fermin, Jason Fermin, Prospero Trinidad, and Solange Troncoso.  These plaintiffs were employed by Pret at various times between 2008 and 2012.  Trinidad Decl. ¶ 1; Janckell Decl. ¶ 1; Jason Decl. ¶ 1; Prospero Decl. ¶ 1; Solange Decl. ¶ 1.

Pret hires its employees into a general "Team Member" position, cross-training Team Members for both front-of-house and kitchen duties.  Anders Dep. 28–29.  Team Members are often called to work on Pret's cash registers during busy periods, and kitchen employees are often charged with running food to stock food-display cases, known as "langars."  *Id.* at 31–32, 92–93, 129, 133.  As set forth in the Complaint and in each plaintiff's declaration, plaintiffs allege that Pret adopted the following illegal policies:  (1) failure to pay the proper overtime

---

[1] The Court's account of the facts is drawn from the First Amended Class and Collective Action Complaint ("Am. Compl.") (Dkt. 15); the Declaration of Manuel A. Trinidad ("Trinidad Decl.") (Dkt. 19); the Supplement to Declaration of Manuel A. Trinidad ("Trinidad Supp. Decl.") (Dkt. 24); the Declaration of Janckell Fermin ("Janckell Decl.") (Dkt. 27); the Declaration of Jason Fermin ("Jason Decl.") (Dkt. 28); the Declaration of Prospero Trinidad ("Prospero Decl.") (Dkt. 29); the Declaration of Solange Troncoso ("Solange Decl.") (Dkt. 34); the deposition of Mark Anders ("Anders Dep."), which is Exhibit A of the Declaration of Wendy C. Butler in Support of Defendants' Opposition to Plaintiff's Motion for Collective Certification and for Court Facilitation of Notice Pursuant to 29 U.S.C. § 216(b) (Dkt. 36); and the depositions of Manuel A. Trinidad, Janckell Fermin, Jason Fermin, Prospero Trinidad, and Solange Troncoso ("Trinidad Dep.", "Janckell Dep.", "Jason Dep.", "Prospero Dep.", and "Solange Dep."), which are Exhibits 16A–E of the Reply Memorandum of Law in Support of Plaintiffs' Motion for Conditional Collective Certification (Dkt. 51).

[2] In its brief, Pret represents that there are 35 stores in New York.  *See* Def. Cert. Br. 2.

premium under the FLSA; (2) failure to pay proper tip compensation due to an invalid tip-pooling policy; (3) failure to pay for off-the-clock work; (4) and failure to comply with various provisions of the NYLL.  Am Compl. ¶¶ 25–31.  The allegations of the individual plaintiffs, derived from their declarations and depositions, are summarized below.

### 1.   Manuel Trinidad

Manuel Trinidad worked for Pret between March 2010 and June 2010.  Trinidad Decl. ¶ 1.  He was hired as a sandwich maker and cashier at the store located at 1200 Avenue of the Americas.  *Id*.  In his declaration, Trinidad also attested to having worked at stores located at 287 Madison Avenue and 30 Rockefeller Center.  *Id*.  During his deposition, Trinidad listed various additional Pret stores at which he worked, including:  51st Street and 6th Avenue, 48th Street and Madison Avenue, 38th Street and 7th Avenue, 56th Street and 6th Avenue, and 53rd Street and Lexington Avenue.  Trinidad Dep. 35, 198–203.

Trinidad alleged that between March 2010 and May 2010, he worked nine hours per day, five days a week, for a total of 45 hours per week.  Am. Compl. ¶ 24.  In June 2010, Trinidad alleged, he worked seven hours per day for five days per week, for a total of 35 hours per week.  *Id*.  In his deposition, he added that although he was regularly scheduled to work from 12 p.m. to 9 p.m., he often worked past 9 p.m.  Trinidad Dep. 55–56.

In his declaration, Trinidad attested that he was not compensated for all hours worked, nor paid the appropriate overtime premium.  Trinidad Decl. ¶ 2.  He also attested that he observed that all cashiers were required to share tips with non-cashier employees, "even when such employees never served customers."  *Id*. ¶ 5.  He attested that he was required to arrive 30 minutes before his scheduled start time, and that he "frequently" worked past his scheduled end time, but was never compensated for this time.  Trinidad Supp. Decl. ¶¶ 1–2.

### 2.     Janckell Fermin

Janckell Fermin worked for Pret between August 2009 and June 2011.  Janckell Decl. ¶ 1.  He initially worked exclusively in the kitchen, but in February 2010 he began to work also as a cashier.  *Id.*  He began his employment at the store located at 880 Third Avenue, but, in February 2010, transferred to the store located at 630 Lexington Avenue.  *Id.*; Janckell Dep. 26, 36–37.

In his declaration, Janckell attested that he was not compensated for all hours worked, nor paid the appropriate overtime premium.  Janckell Decl. ¶ 2.  He attested that his regular schedule was Monday through Friday from 1 p.m. to 9 p.m., with a 30-minute lunch break, but that he "frequently" worked through lunch and was not compensated for lunch-break work.  *Id.* ¶ 3.  He further attested that he was required to arrive early to his shift, and "frequently" worked past his scheduled end time by 30 minutes to two hours, but was required to clock in and out using only his scheduled hours and was thus not compensated for this time.  *Id.* ¶¶ 4–5.  He also attested that he had observed that all cashiers were required to share tips with non-cashier employees, "even when such employees never served customers."  *Id.* ¶ 8.  He also attested that he shared in the tip pool even when he had not served customers during his shift.  *Id.* ¶ 9.

### 3.     Jason Fermin

Jason Fermin worked as a cashier for Pret between November 2010 and June 2011.  Jason Decl. ¶ 1.  During his employment at Pret, Jason worked at stores located at 47th Street and Lexington Avenue and 54th Street and Lexington Avenue.  *Id.*; Jason Dep. 24, 31.

In his declaration, Jason asserted that he was not compensated for all hours worked, nor paid the appropriate overtime premium.  Jason Decl. ¶ 2.  He stated that his regular schedule was Monday, Tuesday, Wednesday, and Friday from 4 p.m. to 9 p.m., with no scheduled break, but

that he "frequently" worked "in excess of six hours per day" with no break.  *Id.* ¶ 3.  He further

attested that he was required to arrive early to his shift, and "frequently" worked past his

scheduled end time by anywhere between 1.5 and three hours, but was required to clock in and

out using only his scheduled hours and was thus not compensated for this time.  *Id.* ¶¶ 4–6.  He

attested that during his first few days at work he signed in and out based on his actual working

time, but that a Team Member Trainer named Jennifer informed him that company policy was to

sign in and out based on scheduled working hours.  *Id.* ¶ 5.  Nevertheless, Jason attested that at

times he would clock out using his actual end time, but still would not be paid accordingly.  *Id.* ¶

6.  He also attested that he had observed that all cashiers were required to share tips with non-

cashier employees, "even when such employees never served customers."  *Id.* ¶ 9.

### 4.    Prospero Trinidad

Prospero Trinidad worked as a Team Member for Pret between October 2009 and April

2010.  Prospero Decl. ¶ 1.  He worked primarily as a cashier, but also did occasional work in the

kitchen.  *Id.*   In his declaration, Prospero attested to having worked at stores located at 50th

Street and 7th Avenue, 32nd Street and Park Avenue, 42nd Street and 6th Avenue, 48th Street

and Madison Avenue, and 16th Street and Broadway.  *Id.*   In his deposition, he also testified to

having worked at additional stores located at 41st Street and Lexington Avenue, 54th Street and

5th Avenue, and Rockefeller Center.  Prospero Dep. 126, 131, 138–39.

In his declaration, Prospero attested that he was not compensated for all hours worked,

nor paid the appropriate overtime premium.  Prospero Decl. ¶ 2.  He attested that his regular

schedule was Monday to Friday from 6:30 a.m. to 2:30 p.m., with a 30-minute lunch break, but

that he would work through lunch when his store was busy.  *Id.* ¶ 3.  He further stated that he

was required to arrive early to his shift, and worked past his scheduled end time "on a daily

basis" by one to 1.5 hours, but was required to clock in and out using only his scheduled hours and was thus not compensated for this time.  *Id.* ¶¶ 3–5.  He attested that, on occasion, he would clock out using his actual end time, but his store manager would cross out the extra time, so he was not paid for the time he actually worked.  *Id.* ¶ 5.  He also attested that he saw a store manager named Roblyn shredding the sign-in sheet.  *Id.*  He also attested that he had observed that all cashiers were required to share tips with non-cashier employees, "even when such employees never served customers."  *Id.* ¶ 8.

### 5. Solange Troncoso

Solange Troncoso worked as a Team Member for Pret from May or July 2008 to January 2012.  Solange Decl. ¶ 1; Solange Dep. 9.  She primarily worked as a cashier, but occasionally worked in the kitchen as well.  Solange Decl. ¶ 1.  In her declaration, Solange attested to having worked at stores located at 39th Street and Broadway, 54th Street and Park Avenue, 53rd Street and 3rd Avenue, and 41st Street and Lexington Avenue.  *Id.*  In her deposition, she also testified to having worked "occasionally" at three other locations.[3]  Solange Dep. 76.

In her declaration, Solange attested that she was not compensated for all hours worked, nor paid the appropriate overtime premium.  Solange Decl. ¶ 2.  She stated that her regular schedule was Monday to Friday for 8.5 hours per day, with a 30-minute lunch break, but that she would work through lunch when her store was busy.  *Id.* ¶ 3.  She further attested that she was required to arrive early to her shift, and worked past her scheduled end time "[t]wo or three times per week" by 30 minutes to one hour, but was required to clock in and out using only her scheduled hours and was thus not compensated for this time.  *Id.* ¶¶ 4–5.  She attested that, on occasion, she would clock out using her actual end time, but that a store manager named Bill

---

[3] The stores were located at Rockefeller Center, "somewhere around 35th Street," and "near 42nd and 5th."  Solange Dep. 76.

would cross out the extra time, explaining that "store managers had to watch their payroll and so that is why they could only pay for scheduled work hours, not actual hours worked." *Id.* ¶ 5. She also attested that she observed that all cashiers were required to share tips with non-cashier employees, "even when such employees never served customers." *Id.* ¶ 8.

### B.    Procedural History

On August 9, 2012, Trinidad filed the original Complaint.  Dkt. 1.  On November 30, 2012, Pret filed an answer.  Dkt. 8.  On December 27, 2012, Trinidad filed the First Amended Class and Collective Action Complaint.  Dkt. 15.  On January 15, 2013, he filed a motion for collective certification and court facilitation of notice, Dkt. 17, and a memorandum of law in support of that motion, Dkt. 18 ("Pl. Cert. Br.").  On March 9 and 11, 2013, just before Pret's opposition brief was due, the other four plaintiffs filed consent to sue forms and declarations in support of class certification.  Dkt. 27–34.  On March 11, 2013, Pret filed a brief in opposition to the original motion for collective certification and for court facilitation of notice, which did not address the recently-filed declarations.  Dkt. 35 ("Def. Cert. Br.").

On March 11, 2013, Pret also submitted a letter requesting that the Court strike the four new declarations as untimely.  The Court denied that request, but granted leave to depose the additional plaintiffs and provide supplemental briefing to address the new affidavits.  Dkt. 42.  In early April 2013, those depositions were taken.

On April 12, 2013, Pret filed a supplemental opposition to the motion for collective certification, Dkt. 43 ("Def. Supp. Cert. Br."), and again moved to strike the declarations of Janckell Fermin, Jason Fermin, Solange Troncoso, and Prospero Trinidad, Dkt. 46 ("Def. MTS Br.").  Pret's second motion to strike the affidavits cited inconsistencies between plaintiffs' affidavits and their deposition testimony.  On April 22, 2013, plaintiffs filed an opposition to the

7

motion to strike, Dkt. 50 ("Pl. MTS Br."), and a reply memorandum in support of the motion for

collective certification,  Dkt. 51 ("Pl. Cert. Reply Br.").  On June 5, 2013, the Court heard

argument.  On June 7, 2013, plaintiffs and Pret submitted letter briefing in response to questions

posed at argument.  Dkt. 57–59.

## II.   Applicable Legal Standard

The FLSA provides that an action may be maintained against an employer "by any one or

more employees for and on behalf of himself or themselves and other employees similarly

situated."  28 U.S.C. § 216(b).  "Although they are not required to do so by FLSA, district courts

'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to

potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented

plaintiffs."  *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffman-La Roche,

Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).[4]  "In determining whether to exercise this discretion

. . . the district courts of this Circuit appear to have coalesced around a two-step method," which

the Second Circuit has endorsed as "sensible."  *Id.* at 555; *see, e.g.*, *Damassia v. Duane Reade,

Inc.*, No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) (Lynch, J.);

*Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.).

"The first step involves the court making an initial determination to send notice to

potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to

whether a FLSA violation has occurred."  *Myers*, 624 F.3d at 555.  "The court may send this

notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs

'together were victims of a common policy or plan that violated the law.'"  *Id.* (quoting *Hoffman*,

---

[4] *Hoffman-La Roche* involved the parallel provision of the Age Discrimination in Employment
Act, which incorporated the enforcement provisions of FLSA, including § 216(b).  "*Hoffman-La
Roche's* interpretation of § 216(b) . . . binds us in FLSA cases as well."  *Myers*, 624 F.3d at 554
n.9.

982 F. Supp. at 261).  Although "[t]he 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,' . . . it should remain a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist."  *Id.* (quoting *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)); *accord Damassia*, 2006 WL 2853871, at *3 ("[A] plaintiff's burden at this preliminary stage is 'minimal.'" (collecting cases)); *Hoffman*, 982 F. Supp. at 261 ("The burden on plaintiffs is not a stringent one.").  "A court need not evaluate the underlying merits of a plaintiff's claims to determine whether the plaintiff has made the minimal showing necessary for court-authorized notice."  *Damassia*, 2006 WL 2853971, at *3; *accord Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 105 (S.D.N.Y. 2003); *Hoffman*, 982 F. Supp. at 262.

"At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.  The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice."  *Myers*, 624 F.3d at 555.

## III.   Discussion

### A.   Motion to Strike

Pret initially sought to strike the additional four plaintiffs' declarations as untimely.  The Court denied that motion but granted leave to depose the additional plaintiffs and thereafter provide supplemental briefing.  Dkt. 42.  On April 2 and 4, 2013, Pret conducted depositions. Shortly thereafter, Pret again moved to strike the additional declarations because the "declarations were not consistent with [Plaintiffs'] actual experiences at Pret.  In fact, the four opt-in declarants contradicted their declarations in numerous ways."  Def. MTS Br. 1.  In

response, plaintiffs argue that the deposition testimony does not contradict the prior declarations, and, to the extent there are inconsistencies within a plaintiff's testimony, those inconsistencies should go only to the weight of the testimony and not its admissibility.  Pl. MTS Br. 5.

An affidavit is admissible where "a reasonable trier of fact could believe the witness had personal knowledge," *Searles v. First Fortis Life Ins. Co.*, 98 F. Supp. 2d 456, 461 (S.D.N.Y. 2000), even if the testimony is "arguably vague," *Colabufo v. Cont'l Cas. Co.*, No. 04 Civ. 1863 (TCP), 2006 WL 1210919, at *6 (E.D.N.Y. Apr. 27, 2006).  The mere fact that testimony is inconsistent is insufficient to justify striking an entire document.  *See Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 37 (D.D.C. 2002) ("Mere inconsistency and contradiction is insufficient to support a motion to strike a document from the record, particularly where, as here, the document that defendants seek to strike is a sworn Declaration signed under penalty of perjury."), *aff'd*, 350 F.3d 1272 (D.C. Cir. 2003).  Where there are alleged discrepancies between affidavits and depositions, minor inconsistencies will go to the credibility of the declarant—and therefore to the weight to be given his or her testimony—rather than the admissibility of the testimony.  *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 67 (E.D.N.Y. 2012) ("[M]inor inconsistencies go to the credibility of the declarants and do not alone warrant striking their declarations."); *see also Colabufo*, 2006 WL 1210919, at *6 ("[T]he lack of certain specific details or arguably vague or conclusory statements will not render Plaintiffs' affidavits inadmissible, but instead affects the weight and credibility of the testimony."); *Damassia*, 250 F.R.D. at 160 (assigning "little weight" to written declarations that contradicted deposition testimony); *Mueller v. Towers*, 3:10-CV-1093 (WWE), 2010 WL 4365771, at *2 (D. Conn. Oct. 25, 2010) ("'A motion to strike is not an appropriate vehicle through which to contest the credibility of a witness or to draw further attention to the fact that one piece of evidence is contradicted by another.'" (quoting *Lohrenz*,

223 F. Supp. 2d at 33)).  And, at the conditional certification stage, courts are not to make

credibility determinations.  *See Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368

(S.D.N.Y. 2007).

The Court does not find sufficiently major discrepancies between plaintiffs' declarations

and their deposition testimony to warrant striking any of their declarations.  Pret cites numerous

examples of inconsistent testimony, *see* Def. MTS Br. 1–3; however, when read in context, these

inconsistencies are, in the main, less consequential than Pret suggests.  For example, Pret cites a

statement in Jason Fermin's declaration that he "observed that other Team members also did not

receive their proper wages and overtime."  Def. MTS Br. 1 (citing Jason Decl. ¶ 2).  His

deposition testimony, as quoted by Pret, stated:  "Why would I know my co-worker's pay stuff?

That's kind of like personal information . . . I'm not going to keep track of [how many hours

other employees worked]."  Def. MTS Br. 1 (citing Jason Dep. 138–39).  However, Jason went

on to state:

> Well, I obviously saw my brother's checks . . . and then my friend Julio Almonte
> . . . .  Well, I don't think I saw all his checks, but I remember like a few times. . . .
> But for some of them, people like Julio that I have seen, Allison which is actually
> my Godsister, I have seen.  Karines is actually my cousin, I have seen.  People in
> my family I have obviously seen.  But I'm not going to be like—I have seen
> John's too, because we would compare checks too, [J]ohn the closing admin in
> my shop.

Jason Dep. 138–39.  The other inconsistencies alleged by Pret are similarly minor and, for the

most part, evidently attributable to imprecision or otherwise explainable.[5]  These inconsistencies

---

[5] For example, Pret contrasts the following statements in its brief:

> Solange Decl. ¶ 3:  "I was always scheduled for an 8.5 hour shift."
> Solange Dep. 70:  "Q:  So he would often schedule you for less than eight hours?
> A:  Yes."

or imprecisions can easily be explained by the context in which they were made—a deposition of

a kitchen worker about events that occurred years in the past, where witnesses may have made

general recollections of practices but not have as confident a command of specifics.  The Court

declines to strike these declarations at this preliminary stage.  However, to the extent there are

inconsistencies between a plaintiff's declarations and depositions, Pret will be at liberty to argue,

where relevant at later stages of this case, that plaintiff's attestation to unlawful business

practices ought not be credited.

### B.    Conditional Certification

#### 1.    Overtime Claims

##### a.    Plaintiffs' Overtime Allegations

Plaintiffs' primary allegations concern unpaid overtime.  The FLSA requires that an

employee who works more than 40 hours in a given workweek be compensated for the hours

worked in excess of 40 "at a rate not less than one and one-half times the regular rate at which he

---

Def. MTS Br. 2.  However, Solange explained in subsequent deposition testimony:  "My schedules are eight hours and a half . . . . Because you—I don't know.  Monday through Friday was eight and a half hours, which was from six to 2:30, but sometimes they would change the hours, like they would make some adjustments."  *Id.* 177–78.

Another example comes from Prospero's testimony.  Pret contrasts these two statements:

> Prospero Decl. ¶ 5:  "During my employment with Defendants, I worked past my scheduled working time every day."
> Prospero Dep. 196:  At 50th and 7th, he only worked past his scheduled shift time "three or four times a week."

Def. MTS Br. 3.  However, Prospero elaborated further in his deposition testimony that he worked past his scheduled shift every day while working at 32nd and Park, and about three or four times per week at 50th and 7th.  Prospero Dep. 196.

is employed." 29 U.S.C. § 207(a)(1).  Each plaintiff alleges that he or she was deprived of

overtime pay, but each does so with varying degrees of specificity.[6]

To state a claim under the FLSA, a complaint must state more than vague legal

conclusions.  As the Second Circuit recently explained, "to state a plausible FLSA overtime

claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some

uncompensated time in excess of the 40 hours."  *Lundy v. Catholic Health Sys. of Long Island

Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)(1)); *accord Nakahata v. New

York-Presbyterian Healthcare Sys.*, No. 11-0734, slip op. at 19 (2d Cir. July 11, 2013) ("To

plead a plausible FLSA overtime claim, plaintiffs must provide sufficient detail about the length

and frequency of their unpaid work to support a reasonable inference that they worked more than

forty hours in a given week.").  Although the *Lundy* standard "does not require an approximate

number of overtime hours, . . . determining whether a claim is plausible is a 'context-specific

task that requires the reviewing court to draw on its judicial experience and common sense,' and

. . . 'under a case-specific approach, some courts may find that an approximation of overtime

hours worked may help draw a plaintiff's claim closer to plausibility."  *Nakahata*, slip op. at 18

n.10 (quoting *Lundy*, 711 F.3d at 114 & n.7).

In holding that the plaintiffs in *Lundy* had failed to plead facts sufficient to support a

plausible claim of a violation of the FLSA, the Second Circuit noted that they had failed to allege

"a single workweek" in which they worked uncompensated time in excess of 40 hours.  *Lundy*,

---

[6] Plaintiffs also allege that they were not paid for off-the-clock work under 40 hours per week.
Compl. ¶¶ 1, 25, 40.  However, this is not a cognizable claim under the FLSA unless there are
also allegations that the unpaid hours below 40 diluted the hourly rate below the minimum wage.
*See Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) ("An
employee who has not worked overtime has no claim under FLSA for hours worked below the
40-hour overtime threshold, unless the average hourly wage falls below the federal minimum
wage.").  Plaintiffs have not alleged they were paid under the minimum wage.  They therefore
have no cause of action under the FLSA for their off-the-clock work under 40 hours.

711 F.3d at 114.  Rather, the plaintiffs had alleged that they "typically" worked a given number

of hours or "occasionally" worked an extra shift or "approximately twice per month" worked a

certain number of shifts.  Those allegations, the Second Circuit stated, "invited speculation [that]

does not amount to a plausible claim under FLSA."  *Id.* at 115; *accord Nakahata*, slip. op. at 18–

19 ("Plaintiffs have merely alleged that they were not paid for overtime hours worked.  These

allegations—that Plaintiffs were not compensated for work performed during meal breaks,

before and after shifts, or during required trainings—raise the possibility that Plaintiffs were

undercompensated in violation of the FLSA and NYLL; however, absent any allegation that

Plaintiffs were scheduled to work forty hours in a given week, these allegations do not state a

plausible claim for such relief.").

     Although a district court need not evaluate the merits of a plaintiff's claim to determine

whether similarly situated plaintiffs exist for purposes of conditional certification and court-

authorized notice, *see, e.g.*, *Damassia*, 2006 WL 2853971, at *3; *Gjurovich*, 282 F. Supp. 2d at

105; *Hoffman*, 982 F. Supp. at 262, and "[t]he court is not to resolve factual disputes, decide

substantive issues going to the merits, or make credibility determinations" at this stage, *see, e.g.*,

*Hamadou v. Hess Corp.,* No. 12 Civ. 0250 (CM), 2013 WL 164009, at *9 (S.D.N.Y. Jan. 16,

2013) (citations omitted), the Court must at this stage evaluate the sufficiency of plaintiffs'

pleadings.  *See Gjurovich*, 282 F. Supp. 2d at 105 ("*Once the Plaintiff makes a colorable claim

for relief*, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly

situated to the named plaintiff." (emphasis added)).  The court's discretionary power to facilitate

the sending of notice to potential class members is premised on its use as a tool for efficient case

management, *Hoffman-LaRoche*, 493 U.S. at 169, 174; *Myers v. Hertz Corp.*, 624 F.3d 537, 555

n.10 (2d Cir. 2010), and it does not promote efficient case management to facilitate notice to

potential class members where the representative plaintiffs have failed to state plausible FLSA

violations.  Much as the Court would not certify a FLSA collective action based on claims of

unlawful conduct that would violate only state law, it makes little sense to certify a collective

action based on manifestly deficient pleadings, *i.e.*, ones insufficient to make out a violation of

the FLSA.  Based on the Court's review of plaintiffs' pleadings, as supplemented by their

declaration, it finds that Manuel Trinidad, Janckell Fermin, and Prospero Trinidad have

sufficiently pled a FLSA overtime claim, while Jason Fermin and Solange Troncoso have not.

Jason's allegations do not amount to a cognizable FLSA overtime claim.  He was hired to

work part-time and testified that he never worked more than 40 hours per week.  Jason Dep. 38–

39, 71.

Solange's allegations do not pass the threshold pleading standard specified by *Lundy*.

Solange's declaration and deposition lack specifics.  In her declaration, she states that she would

work past her scheduled shift ending time by 30 minutes to one hour "[t]wo or three times per

week," but does not elaborate.  Solange Decl. ¶¶ 4–5.  Her deposition testimony does not provide

any more detail about her overtime allegation.  She merely states she was regularly scheduled

from 8:30 a.m. to 3 p.m., but that this changed frequently, and she was later scheduled from 6

a.m. to 2:30 p.m.  Solange Dep. 31, 175.  She also acknowledges that there were "plenty of

times" when she was not scheduled for a full eight-hour shift and that her schedule would often

change.  *Id.* at 176–78.  Based on her testimony, it is unclear whether—and in what capacity—

she worked overtime.  Her allegations thus "supply nothing but low-octane fuel for speculation,

not the plausible claim that is required" under the FLSA.  *Lundy*, 711 F.3d at 115.  Accordingly,

the Court will not exercise its discretion to facilitate notice based on Jason and Solange's claims.[7]

By contrast, Manuel Trinidad's testimony does meet the *Lundy* pleading threshold. Manuel alleges that from March 2010 to May 2010, he worked nine hours per day, five days a week, for 45 hours per week.  Am. Compl. ¶ 24; Trinidad Dep. 55, 110.  In his deposition, he further elaborated that he worked up to one hour before and two hours after his shift each day. Trinidad Dep. 296–97.

Prospero Trinidad also alleges a FLSA overtime claim.  He claims he worked more than 40 hours in more than half of his six-month period at Pret and that he worked past his scheduled shift—12 p.m. to 8 p.m.— every day at the 32nd Street and Park Avenue location.  Prospero Dep. 62, 182, 196.  He also testified that he worked past his scheduled shift "three or four times" per week at the 50th Street and 7th Avenue location.  *Id.* at 196.

Finally, Janckell Fermin testified that he "frequently" worked through lunch and worked past his scheduled end time by 30 minutes to two hours during his scheduled 40-hour work week.  Janckell Decl. ¶¶ 3–5; Janckell Dep. 106–07.  He further testified that he told his manager that he stayed late "every night."  Janckell Dep. 77–78.  He later testified that he worked overtime "like every day."  *Id.* 154–55.

Accordingly, the Court will grant conditional certification based on the overtime claims asserted by Manuel Trinidad, Prospero Trinidad, and Janckell Fermin.

---

[7] Because Pret has not moved to dismiss these claims, the Court will allow Jason and Solange's overtime claims to proceed in this case, but will not use those claims as a basis for collective action certification.

> ### b.  Whether Plaintiffs are "Similarly Situated" to All Pret Employees in New York City

Plaintiffs seek conditional certification for *all* 33 Pret stores in New York City.  Pl. Cert. Br. 1.  However, across their declarations, the three plaintiffs who have alleged plausible overtime claims only testified to working at 10 stores.[8]  The Court takes the list of stores noted in each of the three plaintiffs' declarations as the starting point for its determination as to which Pret stores must provide notice of an overtime claim, and then considers whether there is a basis either to (1) extrapolate from these stores to other Pret stores, based on whether there are sufficient  allegations of a common policy of violating overtimes rules that extends to other stores, or (2) eliminate stores from this list, based on unacceptably tenuous allegations.  In considering this question, plaintiffs' deposition testimony, in addition to their declarations, provides a valuable source of data.

To decide where to provide notice, the Court must determine which stores had employees that were "similarly situated" with regard to the allegedly unlawful overtime policies.  *See Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998) ("The threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" (quoting 29 U.S.C. § 216(b)).  "Neither the FLSA nor its implementing regulations defines 'similarly situated.'" *Hamadou*, 2013 WL 164009, at *8.  "However, courts in this Circuit require that plaintiffs only make a modest factual showing that plaintiffs and other putative collective action members were

---

[8] Manuel Trinidad, Prospero Trinidad, and Janckell Fermin have testified in their Declarations to working, collectively, at the following 10 stores: 1200 Avenue of the Americas, 287 Madison Avenue, 30 Rockefeller Center, 880 Third Avenue, 630 Lexington Avenue, 50th Street and 7th Avenue, 32nd Street and Park Avenue, 42nd Street and 6th Avenue, 48th Street and Madison Avenue, and 16th Street and Broadway.  See Parts (I)(A)(1)–(2), (4), *supra*.  To the extent these plaintiffs testified in depositions to working at additional locations, the Court will not use this testimony to supplement the declarations that plaintiffs offered in support of their motion.

victims of a common policy or plan that violated the law." *Hamadou*, 2013 WL 164009, at *8 (citation and alterations omitted); *see also Realite*, 7 F. Supp. 2d at 306 (collecting cases). This determination is not limited to a review of the allegations in the Complaint: Documents properly considered include plaintiffs' "own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Hamadou*, 2013 WL 164009, at *8 (citation omitted).

Although "courts have regularly found named plaintiffs to be similarly situated to employees at locations where they did not work . . . the plaintiffs [must] demonstrate that they were all subject to the same allegedly unlawful policy or practice." *Id.* at *9; *see also Rosario v. Valentine Ave. Disc. Store, Co., Inc.*, 828 F. Supp. 2d 508, 516–17 (E.D.N.Y. 2011) (collecting cases). When determining which stores to conditionally certify, "courts consider whether the plaintiffs have made an adequate factual showing to support an inference that such a *uniform policy* or practice exists, and whether the locations share common ownership or management." *Hamadou*, 2013 WL 164009, at *9 (emphasis added).

Although all Pret stores in New York City are owned by the same parent company, plaintiffs have not demonstrated across all locations a uniform policy of failure to pay overtime compensation. In his deposition, Manuel admits that his manager, Christina, was the only manager who told him to come in early at any Pret store at which he worked. Manuel Dep. 140–41. Furthermore, he testified that not all employees came in before their shifts, and that he never knew (even indirectly) of another manager—aside from Christina—who told employees they could not record all the hours they actually worked. *Id.* at 225, 228–29. He also understood that when his manager Christina failed to pay him overtime, she was doing so in violation of Pret policy. *Id.* at 249.

Janckell and Prospero's testimony similarly suggests that, even at the stores where plaintiffs worked, the alleged overtime violations were not systematic or uniform. Janckell received overtime on some occasions after recording the hours he actually worked, rather than those for which he was scheduled. Janckell Dep. 137–38, 142. Prospero concedes that "[t]here were some weeks where my checks were good," even if it was not all the time. Prospero Dep. 50. Prospero also stated that he did not use the sign-in sheet at stores at which he was only visiting. Instead, he signed in and out from the store at which he was based. *Id.* at 116–17. He too conceded that he received overtime pay, albeit not for the full number of hours for which he worked. *Id.* at 127. Taken together, the plaintiffs' testimony seems to describe inconsistent practices across the Pret stores at which plaintiffs worked. Plaintiffs have not come close to alleging facts "to support an inference [of] a uniform policy" of FLSA-violative overtime practices across *all* Pret stores in New York City. *Hamadou*, 2013 WL 164009, at *9.

Nor have plaintiffs alleged facts supporting an inference of a common policy spanning the full subset of Pret stores at which these plaintiffs attested to working in their declarations. Of the three stores Manuel Trinidad lists in his declaration, he was initially assigned to the store at 47th Street and 6th Avenue,[9] Trinidad Dep. 35, and gave no indication that his home store changed from that store during his three months at Pret. In the Complaint, Trinidad alleges overtime violations from the beginning of his employment in March 2010 until May 2010, Am. Compl. ¶ 24; these allegations thus encompass his work at the 47th Street and 6th Avenue location. Additionally, he testifies to working "two to three times" at the location on 41st Street and Madison Avenue,[10] including two full shifts. Trinidad Dep. 200, 202–03. Trinidad admits

---

[9] This is the same store as 1200 Avenue of the Americas, listed in Trinidad's declaration.

[10] This is the same store as 287 Madison Avenue, listed in Trinidad's declaration.

never "officially" being sent to work at the 30 Rockefeller location, even though he would "help out . . . [a] whole lot." *Id.* at 198, 201.  He further stated that he "never worked" in the 30 Rockefeller location, and "would just go there to pick up food items . . . or just to say hi." *Id.* at 139.  Later in his deposition, Trinidad concedes that he "didn't personally observe" the sign-in procedures at any of the additional stores at which he worked, since he never signed in at those other stores.  *Id.* at 316–17.  Therefore, Trinidad's hours were recorded only at his home store, 1200 Avenue of the Americas (*i.e.*, 47th Street and 6th Avenue).  It is thus appropriate, based on Trinidad's submissions, to extend conditional certification, based on overtime violations, to employees of the store at 1200 Avenue of the Americas, but not those at 287 Madison Avenue or 30 Rockefeller Center.

Janckell testified to working at two stores:  880 Third Avenue and 630 Lexington Avenue.  Jason Decl. ¶ 1.  He moved to the latter store in February 2010.  *Id.*  It was only in February 2010, however, that he began working full-time.  Janckell Dep. 134.  Janckell, in his deposition, testifies that he stayed late "every night," *id.* at 77–78, and that he worked overtime "like every day," *id.* at 154–55, time for which he was not paid.  Because Janckell's deposition provides no evidence of his having worked more than 40 hours before February 2010, when he was scheduled full-time and was also working overtime "like every day," the Court approves conditional certification only for workers at the 630 Lexington Avenue location.

In his declaration, Prospero Trinidad attested to working at five different locations in his time at Pret: 50th Street and 7th Avenue, 32nd Street and Park Avenue, 42nd Street and 6th Avenue, 48th Street and Madison Avenue, and 16th Street and Broadway.  Prospero Decl. ¶ 1.  He testified that he only had two "main" stores, however: 50th Street and 7th Avenue, and 32nd Street and Park Avenue.  Prospero Dep. 27.  Prospero claims he worked more than 40 hours in

more than half of his six-month period at Pret and that he worked past his scheduled shift—12 p.m. to 8 p.m.— every day at the 32nd Street and Park Avenue location. *Id.* at 62, 182, 196.  He also testified that he worked past his scheduled shift "three or four times" per week at the 50th Street and 7th Avenue location. *Id.* at 196.  Similarly, in the approximately three full shifts he worked at the location on 16th Street and Broadway, he claims to have worked 30–45 minutes past his shift end each time and was not compensated accordingly. *Id.* at 142.  At 48th Street and Madison Avenue, where he worked approximately three times, he claims to have worked 45 minutes to one hour past his scheduled eight-hour shift. *Id.* at 115.  Like Manuel Trinidad, he states that he did not use the sign-in sheet at the locations at which he was not based—and the store manager would verbally report Prospero's hours to the manager at his home store. *Id.* at 116–17.  But because Prospero later explains that he had personal conversations with each manager at all stores at which he worked about the policy of only being paid for the hours for which he was scheduled, *see id.* at 118–21, the Court does find his allegations sufficient to indicate a policy of failing to pay overtime at the stores at 16th Street and Broadway, and 48th Street and Madison Avenue.  This statement by Prospero is in contrast to Manuel Trinidad's testimony that his manager Christina was the only person he knew who told employees that they could not record all the hours they actually worked.  Trinidad Dep. 225, 228–29.  Prospero does not, however, provide specifics as to the "two days" he worked at the 42nd Street and 6th Avenue location. *Id.* at 176–78.  The Court therefore finds collective certification appropriate at four of the five stores at which Prospero worked.

Accordingly, the Court authorizes notice to employees at the following six stores: 1200 Avenue of the Americas, 630 Lexington Avenue, 50th Street and 7th Avenue, 32nd Street and Park Avenue, 48th Street and Madison Avenue, and 16th Street and Broadway.

### C.      Tip-Pooling

Plaintiffs also allege that Pret violated the FLSA by "causing them . . . to share tips with non-tipped employees."  Compl. ¶ 42.  Plaintiffs each assert that Pret cashier employees were required to share their tips with other non-cashier employees who did not serve customers. Trinidad Decl. ¶ 5; Janckell Decl. ¶ 8; Jason Decl. ¶ 9; Prospero Decl. ¶ 8; Solange Decl. ¶ 8.

The FLSA requires covered employers to pay employees a minimum wage.  *See* 29 U.S.C. § 206(a).  The FLSA's definition of "wage" provides that, under certain circumstances, employers of "tipped employees" may apply part of such employees' tips towards that minimum wage.  *See id.* § 203(m).  The practice of crediting some of an employee's tips towards the required minimum wage is commonly referred to as taking a "tip credit."  The FLSA sets the following conditions for an employer to take a tip credit:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. *The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips*.

29 U.S.C. § 203(m) (emphasis added).

Important here, however, under a consistent body of case law, those FLSA conditions apply only when the employer pays the employee below minimum wage and relies on a tip credit to supplement that wage.  *See Chan v. Triple 8 Palace, Inc.*, No. 03 Civ. 6048 (GEL), 2006 WL

851749, at *15 (S.D.N.Y. Mar. 30, 2006) ("[T]o the extent plaintiffs rely on federal law, they can prevail only if defendants have relied on the tip credit."); *accord Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 581 (9th Cir. 2010); *Garcia v. La Revise Assocs. LLC*, No. 08 Civ. 9356 (LTS)(THK), 2011 WL 135009, at *8 (S.D.N.Y. Jan. 13, 2011).  Under this line of authority, an employer's failure to abide by the requirements the FLSA sets for tip-pooling violates the FLSA only if, without the tip credit, the employee's compensation would fall short of the minimum wage.  Here, however, each plaintiff attested to making well above the minimum wage without the tip credit.  *See* Trinidad Decl. ¶ 2; Janckell Decl. ¶ 2; Jason Decl. ¶ 2; Prospero Decl. ¶ 2; Solange Decl. ¶ 2.  And at argument, plaintiffs' counsel conceded that Pret does not rely on a tip credit to calculate employees' wages.

In an attempt to salvage their tip-credit claim, plaintiffs argue that the employer's reliance on a tip credit to achieve the minimum wage is not, in fact, necessary for there to be a violation of the tip-pooling provisions of the FLSA.  They rely on a recent Department of Labor ("DOL") regulation, which provides:

> Tips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA.  The employer is prohibited from using an employee's tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section 3(m): As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool.

29 C.F.R. § 531.52.  Plaintiffs are correct that, under this regulation, the practice in which tips are shared with employees who do not "customarily and regularly" receive tips is unlawful, even if the employee's non-tip wages meet or exceed the minimum wages.[11]

---

[11] Tracking the statutory language quoted above, DOL's regulations provide that a valid tip pool "can only include those employees who customarily and regularly receive tips," 29 C.F.R. § 531.54, and that, with the exception of tips contributed to such a valid tip pool, "the tip credit provisions of section 3(m) also require employers to permit employees to retain all tips received by the employee," *id.* § 531.59.

The issue presented for the Court is whether DOL's regulations accord with the statutory language.  In adopting these regulations, DOL expressed its disagreement with the Ninth Circuit's decision in *Woody Woo*, 596 F.3d at 581, holding that an employer's failure to abide by the statute's tip-credit requirements violated the statute only where, without the tip credit, the employee's compensation would fall below the minimum wage.  *See* 76 Fed. Reg. 18,832, 18,841–42 (Apr. 5, 2011).  In *Woody Woo*, the Ninth Circuit began with the background principle articulated by the Supreme Court that:  "In businesses where tipping is customary, the tips, *in the absence of an explicit contrary understanding*, belong to the recipient.  Where, however, [such] an arrangement is made . . . , *in the absence of statutory interference, no reason is perceived for its invalidity*."  *Woody Woo*, 596 F.3d at 579 (quoting *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 397 (1942) (emphasis supplied by *Woody Woo*)).  It therefore asked whether the FLSA imposed such a "statutory interference."  The Ninth Circuit held that the text of the FLSA unambiguously did not:  Section 203(m) "imposes *conditions* on taking a tip credit and does not state freestanding *requirements* pertaining to all tipped employees.  A statute that provides that a person must do X in order to achieve Y does not mandate that a person must do X, period."  *Id.* at 581 (emphasis in original).

DOL disagreed, finding the Ninth Circuit's reading of the FLSA "unsupportable."  76 Fed. Reg. at 18, 842.  DOL stated that "[t]he fact that section 3(m) does not expressly address the use of an employee's tips when a tip credit is not taken leaves a 'gap' in the statutory scheme," which DOL may reasonably fill.  *Id.* at 18, 841.  DOL accordingly filled this perceived gap with the aforementioned regulations, which appear to create a freestanding cause of action for tipped employees who are forced to share their tips with non-tipped employees, regardless of whether they are otherwise paid the minimum wage.

24

The parties vigorously debate whether DOL's regulations permissibly apply the FLSA so as to give plaintiffs a cause of action based on Pret's alleged tip-pooling practices.  *See* Pl. Cert. Reply 7–8; Dkt. 57 (plaintiffs' post-argument letter brief); Def. Cert. Br. 17 n.7; Dkt. 59 (defendants' post-argument letter brief).   Pret, in particular, argues that these regulations are invalid at either step of the governing *Chevron* analysis.  *See generally Chevron, USA Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).[12]  Although the Court need not resolve this issue definitively on this motion for conditional certification, the Court finds Pret's argument more persuasive:  The DOL regulations are contrary to the plain language of § 203(m). The holding of *Woody Woo* was based on the plain language of § 203(m), and DOL's intervening regulations are based on a repudiation of the reasoning in *Woody Woo*.  *Cf. Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.").

In this Court's judgment, however, the analysis in *Woody Woo* is persuasive:  By its terms, Section 203(m) imposes conditions on tip-pooling arrangements as a means of vindicating the FLSA's minimum wage requirement.  It is not plausibly read to impose a nationwide freestanding code of conduct regarding the handling of tip money where the statute's minimum-wage command is otherwise met.  *See Woody Woo*, 596 F.3d at 581; *Chan*, 2006 WL 851749, at *15; *Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002) ("Congress gave employers of tipped employees a simple choice: either allow employees to keep

---

[12] Pret separately argues that, even if the regulations are valid, Pret has not violated them, because its employees are trained to work interchangeably between the front of the store and the kitchen, and therefore all or most of them are persons who "customarily and regularly" receive tips.  *See* Def. Cert. Br. 18–21; Def. Supp. Cert. Br. 4–5.

all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage."); *accord Oregon Rest. & Lodging v. Solis*, 3:12-CV-01261-MO, 2013 WL 2468298, at *6–9 (D. Or. June 7, 2013) (holding relevant DOL regulations to be invalid because § 203(m) is clear and unambiguous).  Had Congress intended to federalize tipping practices—*i.e.*, to mandate generally that tips are the property of the employee absent a valid tip pool—it could and presumably would have expressed this intention without keying the tip-pooling requirements to the tip credit.  Reading § 203(m) to implicitly impose such a mandate would render the FLSA's references to tip credits superfluous.  *See Woody Woo*, 596 F.3d at 581 (citing *United States v. Menasche*, 348 U.S. 528, 538–39 (1955)).

Put differently, contrary to DOL's regulation, § 203(m)'s silence regarding employers' use of tips when no tip credit is taken is not a "gap" in the statute left to be filled, so much as an area of workplace conduct unaddressed by a statute concerned with a different problem entirely: assuring the payment of minimum compensation to employees. *See Williams*, 315 U.S. at 397; *see also Oregon Rest. & Lodging*, 2013 WL 2468298, at *7–9 (finding no explicit or implicit gap to be filled in § 203(m)); *cf. Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000) (unless the FLSA prohibits an employer from adopting a policy, that policy does not violate the FLSA).[13]

Because the Court is highly skeptical that DOL's regulations permissibly construe the statute, and because it is undisputed that Pret paid its employees the minimum wage without taking into account the tip credit, the Court, in its discretion, declines to conditionally certify a class based on plaintiffs' tip-pooling claims.  For the time being, the Court will not strike the tip-pooling claims of those plaintiffs who have opted in to the case and who articulate such a theory.

---

[13] The Court also notes that the primary purpose of the FLSA is "to protect all covered workers from substandard wages and oppressive working hours."  *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981).  Where, as here, an employee undisputedly is paid minimum wage, the FLSA's primary purpose is fulfilled.

However, plaintiffs are on notice that, for these claims to survive what the Court anticipates will be a motion for summary judgment, they must show, more persuasively than they have to date, that DOL's regulations are a valid construction of the statute.

### D.    Form of Notice

Plaintiffs also seek approval of a proposed form of notice, which they propose be sent to all non-exempt employees employed by Pret at the stores approved by the Court within the six years prior to the filing of the Complaint.  Pl. Cert. Br. Ex. A (proposed form of notice). Plaintiffs further request that Pret provide, in Excel format, the name, title, compensation rate, hours worked per week, period of employment, last known mailing address, and all known telephone numbers of all prospective class members.  *Id.* at 2.  Plaintiffs also request that the notice be posted in "a conspicuous location" at each Pret store in New York City.  *Id.* at 2.

Pret objects to the scope, content, and manner of delivery of the notice.  Def. Cert. Br. 23. It argues that a three-year window is more appropriate and that the proposed notice incorrectly invites employees outside New York City to opt-in to the class, even though plaintiffs only seek to certify a class of employees situated in New York City.  *Id.* at 24.  Pret further argues that notice should be provided through first class mail and not in-store posting.  *Id.*  To the extent that notification by mail is appropriate, Pret argues it should not have to provide telephone numbers of potential class members.  *Id.* at 25.

"The FLSA generally provides for a two-year statute of limitations on actions to enforce its provisions, but allows a three-year limitations period for 'a cause of action arising out of a willful violation.'"  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999), *holding modified by Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir. 2003) (citing 29 U.S.C. § 255(a) (1994)).  Courts in this Circuit have approved both three- and six-year notice periods,

depending on the facts. *Compare Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410–11 (S.D.N.Y. 2012) (six years) (collecting cases); *Schwerdtfeger v. Demarchelier Mgmt., Inc.*, No. 10 Civ. 7557 (JGK), 2011 WL 2207517, at *6 (S.D.N.Y. June 6, 2011) (six years); *Klimchak v. Cardrona, Inc.*, No. 09 Civ. 04311 (SJF), 2011 WL 1120463, at *7 (E.D.N.Y. Mar. 24, 2011) (six years); *and Pineda v. Jim-Mar Consultants, Inc.*, 741 F. Supp. 2d 403, 404 (E.D.N.Y. 2010) (six years), *with Hamadou*, 2013 WL 164009, at *15 (three years); *Lujan*, 2011 WL 317984, at *9 (three years); *and McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 396, 400 (E.D.N.Y. 2011) (three years) (collecting cases).

The courts that have approved six-year notice periods have cited the economy of providing notice to plaintiffs with FLSA claims who may also have NYLL claims subject to a six-year statute of limitations. *See, e.g.*, *Winfield*, 843 F. Supp. 2d at 410–11; *Schwerdtfeger*, 2011 WL 2207517, at *6; *Klimchak*, 2011 WL 1120463, at *7. By contrast, the courts that have approved three-year notification windows have cited the confusion caused by notifying plaintiffs who potentially have two disparate claims with different statutes of limitations, along with the inefficiency of providing notice to plaintiffs whose claims may well be time-barred. *See e.g.*, *Hamadou*, 2013 WL 164009, at *15; *Lujan*, 2011 WL 317984, at *9; *McBeth*, 768 F. Supp. 2d at 400.

Here, the latter rationale is more persuasive. The motion before the Court is only for collective certification of a FLSA opt-in class, and not class certification under Fed. R. Civ. P. 23 for claims under the NYLL. *See Lujan*, 2011 WL 317984, at *9. The Court's discretion to facilitate notice of FLSA claims is premised on its case management authority; that authority is "distinguishable in form and function from the solicitation of claims." *Hoffman-LaRoche*, 493 U.S. at 174. Authorizing notice for a time period twice the length of the maximum FLSA

limitations period would not serve the efficiency goal articulated in *Hoffman*.  Thus, the Court

orders that notification be sent to all non-exempt employees of the six Pret locations listed,

whom Pret employed in the three-year period before the filing of the Complaint.[14]

The Court also permits the posting of notice in a non-public area of the six Pret locations

listed above, such as in a break room or near the clock-in station.  Courts in this Circuit

frequently approve posting in the workplace.  *See, e.g.*, *Garcia v. Pancho Villa's of Huntington*

*Vill., Inc.*, 678 F. Supp. 2d 89, 96 (E.D.N.Y. 2010) (collecting cases); *Malloy v. Richard*

*Fleischman & Assocs. Inc.*, No. 09 Civ. 322 (CM), 2009 WL 1585979, at *4 (S.D.N.Y. June 3,

2009); *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 338 (W.D.N.Y. 2008) ("[I]t will

not be overly burdensome to require defendant to post a hard copy of the class notice on each of

its employee common area bulletin boards."); *Sherrill v. Sutherland Global Servs., Inc.*, 487 F.

Supp. 2d 344, 351 (W.D.N.Y. 2007) ("[Defendant] is hereby required to post continuous notice

of this action and opt-in forms in a conspicuous location in each of its call centers . . . . This

method, along with the mailing of notices, strikes the appropriate balance between ensuring

adequate notification, while also minimizing any disturbance to Sutherland's workplace.")

Pret stated at argument that posting in the Pret stores will be unnecessarily disruptive and

will start a conversation among employees.  That argument is unpersuasive.  A purpose of notice

*is* to start a conversation among employees, so as to ensure that they are notified about potential

violations of the FLSA and meaningfully able to vindicate their statutory rights.  The Court also

finds plaintiffs' request for prospective class member information reasonable, save that it is

---

[14] Because equitable tolling issues often arise as to individual opt-in plaintiffs, "courts frequently
permit notice to be keyed to the three-year period prior to the filing of the complaint, 'with the
understanding that challenges to the timeliness of individual plaintiffs' actions will be
entertained at a later date.'" *Hamadou*, 2013 WL 164009, at *15 (quoting *Winfield*, 843 F. Supp.
2d at 410 (other citations omitted)).   Should equitable tolling issues arise in this case after
conditional certification as to particular plaintiffs, the Court will timely address those issues.

unnecessary for Pret to provide the telephone numbers of prospective class members.  First-class

mail and in-store posting is sufficient to provide notice to potential opt-in class members.  *See*

*Rubery*, 569 F. Supp. 2d at 338 (ordering only mailed and posted notice where "plaintiff has

made no showing that would justify going beyond the belt-and-suspenders approach of utilizing

both mailed and posted notices, and requiring defendant to further notify its employees via

company e-mail and newsletter publications"); *Sherrill*, 487 F. Supp. 2d at 351 (finding a

proposal to e-mail, physically post, mail, and publish notice in an employee newsletter to be

"broader than necessary").  Pret should provide all other requested information within 10 days of

this Order.

**CONCLUSION**

For the foregoing reasons, the Court grants collective certification for a class consisting of all non-exempt employees who have worked at Pret during the three years prior to the filing of the Amended Complaint at the following six stores in New York City: 1200 Avenue of the Americas, 630 Lexington Avenue, 50th Street and 7th Avenue, 32nd Street and Park Avenue, 48th Street and Madison Avenue, and 16th Street and Broadway. Plaintiffs are directed to submit a revised form of Notice consistent with this Order within two weeks. Within 10 days of the Court's approval of that Notice, it shall be posted in a non-public space at these locations. Pret shall provide plaintiffs with the specified information about prospective class members within 10 days of this Order.   Pret's motion to strike is denied. The Clerk of Court is directed to terminate the motions pending at docket numbers 17 and 45.

SO ORDERED.

_Paul A. Engelmayer_

Paul A. Engelmayer
United States District Judge

Dated: July 11, 2013
      New York, New York

31