UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

MANUEL A. TRINIDAD, et al.,

                              Plaintiffs,

           –v–

PRET A MANGER (USA) LIMITED, et al.,

                         Defendants.

------------------------------------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:** _____
**DATE FILED:** 9/19/14

12 Civ. 6094 (PAE)

OPINION & ORDER

**PAUL A. ENGELMAYER, District Judge:**

On September 5, 2014, the Court held a fairness hearing regarding the proposed class action settlement in this case. *See* Dkt. 133, 134 ("Tr."). Based on the parties' submissions and the helpful and extended colloquy with counsel at that hearing, the Court approves the settlement agreement, subject to the modifications to the service awards and attorneys' fees detailed below.

## I.    Background

### A.    Procedural Background

On August 9, 2012, plaintiffs filed this lawsuit against Pret a Manger (USA) Limited ("Pret"), claiming violations of federal and state wage laws with respect to all 35 then-existing Pret stores in New York City. *See* Dkt. 1; Tr. 4–5. Plaintiffs sued on behalf of themselves and all similarly situated individuals who worked in any covered position at the 35 Pret stores during the six preceding years. *See* Dkt. 1. On November 30, 2012, defendants filed an answer. Dkt. 8. In response, on December 27, 2012, plaintiffs filed the First Amended Complaint. Dkt. 15 ("FAC"). The FAC alleges violations by Pret of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), including failure to fully compensate plaintiffs for all hours

worked, failure to pay employees for overtime hours at the required rate, improper tip pooling, and lack of adequate wage statements.  FAC ¶¶ 38–45, 51–54.

On January 15, 2013, plaintiffs moved for conditional class certification, Dkt. 17, and filed a supporting memorandum of law, Dkt. 18, and declaration, Dkt. 19.  Over the next several weeks, plaintiffs supplemented their submission with affidavits from each of the five named plaintiffs.  Dkt. 24, 27, 28, 29, 34.  On March 11, 2013, defendants filed an opposition to plaintiffs' class certification motion, Dkt. 35, along with several declarations, Dkt. 36, 37, 38, 39, 40, 41, 44.  On April 22, 2013, plaintiffs submitted their reply, Dkt. 51, and multiple reply affidavits, Dkt. 52, 54.  After thoroughly reviewing all of the submissions and holding oral argument, the Court issued its opinion and order on July 11, 2013.  Dkt. 60.  The Court granted conditional class certification as to overtime claims at six Pret stores, but denied the motion as to other claims and other Pret stores.  *Id.*

Discovery in this case consisted of depositions of the five named plaintiffs and of Pret's corporate representative, and substantial document production.  *See* Dkt. 127 at 4.  As a result of discovery and the parties' informal sharing of information, plaintiffs refined their claims to focus heavily on so-called "gap time" claims.  Specifically, plaintiffs' counsel reported at the fairness hearing that the heart of plaintiffs' case became the claim that Pret had failed to compensate Pret employees for modest increments of time working or preparing for work that fell just before or just after the scheduled start of the work day. Tr. 14.  These increments included times when Pret employees were changing into their uniforms, or waiting in line to use the changing room. Tr. 8–9, 12.  Plaintiffs' counsel determined, however, that employees had not been compensated for time worked before the start of their officially scheduled shifts.  Tr. 8–10.  At the same time, plaintiffs' counsel determined, contrary to the claims in the FAC, that few Pret employees had

viable overtime claims because most worked only part-time and therefore fewer than 40 hours per week.  Tr. 8; *see also* Tr. 12, 14, 15, 21–22.

In January 2014, after engaging in numerous informal settlement discussions, the parties participated in an 18-hour mediation session.  *See* Dkt. 127 at 4.  The parties ultimately reached a resolution at that session and notified the Court of their intent to settle the matter.  Dkt. 91.  Over the next several weeks, the parties continued to negotiate and to finalize and memorialize the terms and conditions of their settlement agreement.

Before the Court now is plaintiffs' motion for final approval of the class action settlement, Dkt. 125, along with a supporting declaration, Dkt. 126 ("Settlement Decl."), and memorandum of law, Dkt. 127 ("Settlement Br.").  In separate motions, plaintiffs request service awards and attorneys' fees.  *See* Dkt. 128, 129 ("Service Award Br."), 130, 131 ("Fee Decl."), 132 ("Fee Br.").  The defendants do not oppose these motions.  Potential class members have been provided with notice of the proposed settlement; no objections have been received, and 22 potential class members have opted out of the settlement.

For the following reasons, the Court approves the settlement agreement and grants, in part, plaintiffs' requests for service awards and attorneys' fees.

## B.    Settlement Terms

The settlement agreement provides that Pret shall pay $910,000 to the class.  Settlement Br. 5.  Attorneys' fees and costs, individual service awards, and costs generated by the claims administration process are to be paid out of this $910,000, subject to the Court's approval of those fees and costs.  *Id.*

After these deductions, the remaining sum—the "Net Settlement Fund"—will be distributed to claimants who worked at the 35 Pret stores in New York City at any time between

August 9, 2006, and March 28, 2014.  *Id.*  The Net Settlement Fund will be allocated as follows:

First, each qualified class member who worked for Pret for one week or less will receive $5.

Settlement Br. 6.  The parties estimate that 500 of the 4,119 class members worked at Pret for

one week or less and therefore will receive a $5 award.  Tr. 45–46, 51.  Second, each qualified

class member who worked at Pret for more than one week will receive a share of the remaining

Net Settlement Amount proportionate to the number of weeks he or she worked during the

relevant time period.  Settlement Br. 6–7.  Counsel anticipates that these class members will each

receive approximately $4.50 for each week they worked at Pret, Tr. 28, such that individuals

employed for the entire time period will receive as much as $1,900, Tr. 51.  In light of the

deductions the Court approves herein, the average class member will receive around $174.

In return, all class members who have not opted out will release all of their wage and

hour claims and other labor claims under federal, state, and local law—including related claims

for attorneys' fees and costs—against the defendants and their affiliates.  Settlement Br. 6–7.

Any unclaimed funds will go to City Harvest, a charitable organization that has a longstanding

relationship with Pret.  *See* Tr. 49.

## II.     Discussion

### A.     Certification of the Settlement Class

For the Court to finalize the settlement, the class must satisfy the prerequisites for

certification under Federal Rule of Civil Procedure 23(a) and 23(b)(3).

#### 1.     Compliance with Federal Rule of Civil Procedure 23(a)

Under Rule 23(a), one or more members of a class may sue as representative parties on

behalf of all members only if the requirements of (1) numerosity, (2) commonality, (3) typicality,

and (4) adequacy are all met.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011).

The class here is defined as "all current and former employees of Pret who worked for Pret in New York City as a team member . . . or any other non-exempt, non-management store position at any time from August 9, 2006 to . . . March 28, 2014."  Settlement Br. 5.  The numerosity requirement is met where the class is so large that joinder of all members would be impracticable.  Here, the class consists of 4,119 members.  This number would make joinder impracticable.  *See, e.g.*, *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir 1993) (proposed class with approximately 100 members satisfied numerosity requirement).  The Court therefore finds the numerosity requirement satisfied.

The commonality and typicality requirements demand that there be questions of law or fact common to the class and that the claims of the representative parties be typical of the class's claims.  *See, e.g.*, *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  All class members here were allegedly subject to common conduct by Pret.  Specifically, plaintiffs allege that all Pret stores, per a common policy, paid employees only for scheduled hours; Pret therefore systematically failed to pay employees for "gap time" spent working outside of their scheduled shifts.  *See* Tr. 16–20.  Pret, for its part, does not contend that it ever instructed its stores to pay employees for "gap time."  Tr. 20.  Therefore, although practices such as tip-pooling may have differed by store, there appears to have been a common policy of not compensating employees for "gap-time" work that affected each of the class members similarly.  The Court therefore finds that the commonality and typicality requirements are met.

Finally, the adequacy requirement is met where the representative parties will fairly and adequately represent the interests of the class.  *See, e.g.*, *Shahriar v. Smith & Wollensky Rest.*

*Grp., Inc.*, 659 F.3d 234, 253 (2d Cir. 2011).  There are no known conflicts between the class representatives here and any class members, and the class is represented by counsel with experience and competence in both class action and employment litigation.  Therefore, the Court finds that this requirement is also met.

### 2.      Compliance with Federal Rule of Civil Procedure 23(b)(3)

Having found Rule 23(a) satisfied, the Court considers whether one of the three prongs of Rule 23(b) applies.  Most relevant here is the third prong, "that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  This rule is designed to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated."  *Amchem Products v. Windsor*, 521 U.S. 591, 615 (1997) (citation omitted) (alteration in original).

Here, there are many questions of law and fact common to the class members, including whether the defendants employed them within the meaning of New York law, whether Pret maintained a policy of compensating employees only for scheduled hours and not "gap time," and whether Pret stores systematically failed to compensate employees for time spent outside these hours working, changing, or waiting to change into their uniforms.

Rule 23(b)(3) also requires that the class action be superior to other available methods for fair and efficient adjudication.  The requirement is satisfied where "[t]he potential class members are both significant in number and geographically dispersed," and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions."  *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 133 (S.D.N.Y. 2001).  Here, there are many class members, and the modest

amount of money at stake for each does not provide a sufficient incentive for any to institute litigation solely on his or her own behalf.  Certification for the purposes of settlement will also allow the settlement to be administered in a uniform and efficient manner by the Claims Administrator.  The Court therefore finds that a class action is the superior method of resolving the claims in this case and certifies this class for the purpose of settlement.

### B.      Approval of the Settlement

The Court must next determine whether the settlement is fair, reasonable, and adequate, looking both at the procedure by which it was reached and its content.

#### 1.      Procedural Fairness

A presumption of fairness arises where, as here, a settlement was reached after arm's-length negotiations between parties represented by competent counsel.  *MBA v. World Airways, Inc.*, 369 F. App'x 194, 197 (2d Cir. 2010) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)).  There is also such a presumption where, as here, the settlement is a by-product of settlement conferences before a neutral mediator.  *Flores v. One Hanover, LLC*, No. 13 Civ. 5184 (AJP), 2014 WL 2567912, at *3 (S.D.N.Y. June 9, 2014).

Both parties here are represented by competent counsel.  The settlement was reached after significant formal and informal discovery.  Formal discovery included depositions taken by each side and document discovery concerning all 35 Pret stores in New York City.  Settlement Br. 4.  Informal discovery included interviews of some 26 opt-in or named plaintiffs by plaintiffs' counsel, as well as exchanges of information between the parties.  *See* Tr. 5–6.  The parties also conducted vigorous negotiations, culminating in an 18-hour mediation session.  Settlement Br. 4.  In light of these facts, the Court finds that the settlement is entitled to the presumption of adequacy and procedural fairness.

### 2.      Substantive Fairness

Courts in this Circuit analyze the substantive fairness of settlement agreements under the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).  Those are: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  *Id.* at 463 (citations omitted).

### i.      The complexity, expense, and likely duration of the litigation

In considering the first factor, the Court weighs the benefits of a potential settlement against the time and expense of continued litigation.  When the parties reached a settlement, this litigation had been ongoing for approximately two years.  The "gap-time" compensation claims at the heart of this case are challenging to substantiate and modest in scale.  Also potentially contributing to the complexity of this case was that claims were brought under both federal and state statutes.  Further litigation would result in additional expense, including costly depositions of various opt-in plaintiffs and possibly others, summary judgment motion practice, pretrial motions, trial preparation, and trial.  These proceedings would generate substantial costs that could meaningfully decrease any possible recovery for plaintiffs.  These considerations therefore weigh in favor of approval.

ii.      *Reaction of the class to the settlement*

The next factor is the reaction of the class to the proposed settlement agreement and the proportion of the class that objects to and opts out of it. Here, the fact that no class members have objected to the proposed settlement provides evidence of its fairness. Likewise, only 22 class members—less than 1% of the total class—have opted out, further supporting approval of the settlement. *See, e.g.*, *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008); *Ross v. A.H. Robins Co.*, 700 F. Supp. 682, 684 (S.D.N.Y. 1988).

To be sure, as the Court advised counsel at the fairness hearing, the notice provided to absent class members was less than ideal. The notice identified the total settlement amount as $910,000, but it did not identify the number of class members nor supply an estimate of how much money each class member could expect to receive. *See* Settlement Decl. Ex. 1-B. It therefore left class members to reason through the likely value of the settlement as to them. At the fairness hearing, the Court probed counsel to assess whether a class member could realistically estimate his or her share of the settlement. *See* Tr. 37–46. Counsel validly pointed out that it is well known among Pret employees (and patrons) that there are many Pret stores in New York City and that each store has a substantial number of employees. Thus, it would be clear to a class member that the settlement fund would be spread among quite a large number of claimants. *See* Tr. 41, 44–45. Counsel also pointed out that the notice does disclose that individuals who worked at Pret for one week or less will receive $5, *see* Settlement Decl. Ex. 1-B, which offers some clue as to the value of the settlement to class members. As the parties advised the Court, class members will receive much the same amount, approximately $4.50, for each week of work in the relevant time period. Tr. 28, 44. In the end, the Court was persuaded that the settlement notice was legally sufficient. However, the sub-optimal clarity of the notice

leads the Court to put only modest weight on the reaction of the class as a factor favoring

approval of the settlement, as it possible that there would have been more opt-outs, or perhaps

objectors, had it been made crystal clear to class members that the average recovery would be

approximately $175 and not a larger sum.

> iii.    *Stage of the proceedings and discovery completed*

The next factor examines whether the parties have conducted sufficient discovery to

understand their claims and intelligently negotiate settlement terms.  *See, e.g.*, *Morris v. Affinity

Health Plan, Inc.*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012) (collecting cases).  As of

settlement, discovery had been ongoing for several months.  Defendants produced thousands of

pages of documents; plaintiffs conducted more than two dozen interviews with named and opt-in

plaintiffs; and both parties conducted depositions.  Indeed, the extended litigation over

preliminary certification of the class gave counsel for both sides an unusually significant early

insight into the strength, and the shortcomings, of plaintiffs' case.

> iv.    *Risks of establishing liability*

Next, the Court must weigh the risk of litigation against the certain recovery offered by

the settlement.  *See, e.g.*, *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164,

177 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  If

this litigation were to proceed, there would be sources of uncertainty—pitfalls that might have

inhibited plaintiffs from prevailing.  Plaintiffs would have had to prove that Pret was obligated to

compensate its employees for the various forms of "gap time" at issue, including time spent

changing into uniform and waiting to use a changing room before the scheduled start of the work

day.  Then plaintiffs would have had to establish that they in fact had worked such "gap hours,"

spans which by definition are short, interstitial, and incapable of solid corroboration as to any

particular workday.   As class counsel acknowledged at the fairness hearing, "some people get in early, some people probably don't, some people may start working, some people may not and may not be consistent. . . . If it's not busy, he may chat with his buddy a little bit before working." Tr. 28–29.  Plaintiffs' claims were therefore difficult to establish individually, let alone on a class-wide basis.  In addition, plaintiffs would have had to prove that Pret had actual or constructive knowledge of the "gap-time" work its employees performed without compensation.  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 365 (2d Cir. 2011).  There is no guarantee that a jury would have found plaintiffs' claims and supporting evidence more credible than Pret's defenses.

Defendants, in fact, expressed confidence that, had the case not settled, they would have prevailed at trial, at least as to claims of class-wide liability.  Tr. 31.  Based on the Court's assessment of the evidence presented at the conditional certification stage of this case, defendants' assessment has a substantial basis in the evidence.  The challenges presented to plaintiffs in establishing liability therefore weigh heavily in favor of approving the settlement.

*v.*      *Risks of establishing damages*

There is also uncertainty as to plaintiffs' ability to prove material damages.  Before the jury, defendants would have denied all of plaintiffs' claims, arguing that its employees were properly compensated for all hours worked.  Had defendants prevailed, the plaintiff class would not be entitled to any damages.  Even if the jury had credited plaintiffs' account, plaintiffs could face an uphill battle in persuading the jury that the small increments of "gap time" worked "off the clock" added up to a meaningful sum.  In the Court's estimation, there was a real prospect that a trial could have resulted in very modest, if not nominal, damages.  The risk of not establishing damages at trial therefore also supports approval of this settlement.

11

        *vi.*      *Risks of maintaining the class action through trial*

Next, the Court must consider the risk of maintaining a class action through trial.  For the reasons set out above, the class here is appropriately certified.  However, there was some risk, had litigation proceeded, that defendants would have succeeded in opposing certification, that the Court would have certified a narrower class than that defined by plaintiffs, or that facts would have emerged that called into question the lead plaintiffs' adequacy to represent a class comprised of employees at all 35 stores (as opposed to, for example, the Pret stores at which the lead plaintiffs worked) or otherwise favored non-certification or de-certification.  To the extent plaintiffs continued to pursue claims other than "gap-time" claims, defendants likely would have argued that there was no uniform policy common to all 35 Pret stores with regard to the payment of overtime wages or tips, and that such practices varied by store.  At least as to such claims, defendants also likely would have disputed that there was a reasonable way to determine damages on a class-wide basis.  *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013).  For plaintiffs, the settlement here eliminates these risks, and also avoids expense and delay.  *See, e.g.*, *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013).

        *vii.*     *Ability of defendants to withstand a greater judgment*

The next factor is whether the defendant has the ability to withstand a greater judgment.  Neither party has indicated that Pret could not sustain a greater judgment, and all indications are that it could.  However, "where, as here, the other *Grinnell* factors weigh in favor of approval, this factor alone does not suggest the settlement is unfair."  *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008).  Accordingly, this factor does not preclude approval of the settlement.

> *viii.*      *Range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation*

Finally, the Court must evaluate the reasonableness of the proposed settlement considering the strength of the plaintiffs' case and the relief offered by the settlement.  The assessment of reasonableness takes into account the uncertainties of law and fact in this case and the risks and costs inherent in proceeding with this lawsuit.  *See Austrian*, 80 F. Supp. 2d at 178.  Both parties estimate the maximum amount of damages for all claims as $4–5 million, Tr. 34–36, and so the settlement reflects between 20 and 25% of the best possible recovery.  However, that assessment presupposes complete success not only on plaintiffs' "gap-time" claims, but also on their other, more tenuous claims as well.  As noted, the Court's judgment—informed by its close examination of the evidence at the conditional certification phase—is that the likelihood of success on those claims was low, except perhaps as to isolated employees.  And, as noted, plaintiffs' "gap-time" claims presented significant challenges as to proving both liability and damages.  *Grinnell* teaches that a far smaller percentage than 20–25% of the maximal recovery may be satisfactory, 495 F.2d at 455 n.2 ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."), and courts in this Circuit have approved settlements at or below this rage, *see, e.g.*, *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 590 (S.D.N.Y. 1992) (approving a class-action settlement that provided class members with less than 2% of their total damages).

The settlement amount here is all the more reasonable given that the Court has reduced the service awards and attorneys' fees, leaving a greater sum to distribute among the class

members.[1]  In light of the significant risks of proceeding with litigation, this substantial recovery weighs in favor of approving the settlement.

For all of the foregoing reasons, the Court concludes that the proposed settlement is both procedurally and substantively fair.

### C.      Approval of the Claims Administrator's Fees

The parties have retained American Legal Claim Services, Settlement Br. 7, and estimate the administration fees at $35,000, *see* Settlement Decl. Ex. 1-B.  Because the exact fees incurred by the Claims Administrator cannot yet be determined, the Court approves deducting from the $910,000 settlement all reasonable fees up to but not exceeding that sum.  Class counsel is charged with reviewing the Claims Administrator's invoices for reasonableness.

### D.      Approval of the Service Awards

Class counsel requests a $7,500 service award for each named plaintiff.  In determining the reasonableness of these proposed awards, the Court considered a number of factors, including the time and effort expended by the plaintiffs, the ultimate recovery, and any burdens sustained by the plaintiffs.  *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 483 (S.D.N.Y. 2013); *Morris*, 859 F. Supp. 2d at 624.  The Court also pursued this point with counsel at the fairness hearing, attempting to discern the distinct contributions of each named plaintiff.  *See* Tr. 52–55.

Plaintiffs Manuel Trinidad, Prospero Trinidad, Janckell Fermin, Jason Fermin, and Solange Troncoso all devoted considerable time and effort to assisting class counsel with this

---

[1] The Court estimates that each class member who worked at Pret for more than one week in the relevant time period will receive, on average, $174.  Were the service awards and fees that plaintiffs requested granted and paid from the $910,000 settlement, each class member would have received nearly $30 less.

case.  They conferred with class counsel, provided factual information to counsel, and helped counsel shape the case.  In addition, in connection with the litigation on the issue of conditional certification, each named plaintiff submitted a witness statement, was deposed by defense counsel, and met with class counsel beforehand to prepare.  The named plaintiffs also participated in the lengthy settlement negotiations and advised class counsel about appropriate terms.  These factors support a service fee.  At the same time, unlike in some lawsuits brought under these statutes, none of the named plaintiffs were employed by Pret during the litigation. Thus, although the named plaintiffs could claim generally to have risked damage to their future employment prospects by virtue of suing Pret, none risked a current job.  *See* Tr. 54.  The named plaintiffs were also spared the burdens of attending and testifying at trial.

The Court's judgment is that a meaningful distinction exists between Manuel Trinidad and the other named plaintiffs.  He was the first to come forward to allege wrongful practices on Pret's part, and the case was originally filed solely in his name. Tr. 54–55.  He also spent the most time working with class counsel and talking to, and recruiting, other potential plaintiffs. Tr. 53.  The Court therefore awards Manuel Trinidad a $7,500 service award, while awarding a $5,000 service award to the other four named plaintiffs.  This allocation fairly reflects the relative contributions of each named plaintiff.  Compared to plaintiffs' counsel's proposed service fees, this award makes an additional $10,000 available to absent class members.

**D.     Approval of Costs**

Class counsel seeks $10,514.06 in costs.  The request is reasonable and proportionate, and is supported by documents attached to plaintiffs' declaration.  *See* Fee Decl. Ex. 1.  The Court therefore grants this request.

### E.      Approval of Attorneys' Fees

Class counsel seeks $303,333 in attorney's fees, one-third of the total settlement amount. As "guardian of the rights of the class members," the Court "is not bound by the amount of the fee award that counsel has requested.  This is true even when, as here, notice of the fee request has been provided to all class members, and no objections have been received." *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 282 (S.D.N.Y. 1993) (citing, *inter alia*, *Jones v. Amalgamated Warbasse Houses, Inc.*, 721 F.2d 881, 884 (2d Cir. 1983)); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 53 (2d Cir. 2000) ("I must consider the attorneys' fee application with 'a jealous regard to the rights of those who are interested in the fund.'" (quoting *Grinnell*, 495 F.2d at 469)).  Accordingly, the Court has independently assessed the fee award appropriate in this case.

The Court began by considering the lodestar figure.  *See Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 5 (2d Cir. 2013) (summary order) (noting that district courts "have remained free to pick and choose between the lodestar and percentage methods in determining a reasonable attorney's fee (citation omitted)).  In support of the fee request, class counsel reports that they invested $232,262.50 worth of time in this case.  *See* Fee Br. Ex. 1.  The Court is skeptical of that figure, for several reasons.

First, approximately 70% of the attorney hours were worked by partner C.K. Lee, billing at an hourly rate of $550.  However, a close review of the tasks that Mr. Lee performed reveals that much and perhaps most of this work could have been performed by junior associates who, in his firm, bill at $175 per hour.  *See* Fee Decl. Ex. 1.  Mr. Lee's timesheets include not only partner-level work such as taking the deposition of Pret's 30(b)(6) witness and leading settlement negotiations, but also drafting routine affidavits, preparing letters to the Court, performing

administrative tasks such as scheduling, and writing non-substantive correspondence.  *See* Fee Decl. Ex. 2.  Mr. Lee is of course at liberty to decide how to use his time and manage his cases, but it is not appropriate, for purposes of gauging the reasonable fee, to assign partner-level rates to tasks that a first- or second-year associate could easily perform.  Based on careful consideration of Mr. Lee's time records and the nature of the work described therein, the Court estimates that half of his hours should have been valued at the associate rate of $175 per hour.

Second, Mr. Lee's reported billing rate of $550 per hour is higher than the norm, which, for wage-and-hour cases in this District, appears to be between $300 and $400 per hour.  *See, e.g.*, *Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*, No. 13 Civ. 3061 (JGK), 2014 WL 2624759, at *7 (S.D.N.Y. June 10, 2014) (collecting cases) ("In labor and employment cases, courts in this district have approved hourly rates of $300–400 for partners."); *Finch v. N.Y. State Office of Children & Family Servs.*, 861 F. Supp. 2d 145, 154 n.53 (S.D.N.Y. 2012) ("There are only a handful of civil rights cases within the Southern District of New York where an attorney was awarded $500 per hour or more.").  The Court's judgment is that Mr. Lee's partner-level work should be billed, for lodestar-calculation purposes, at $400 per hour.

Third, many of Mr. Lee's time entries are thinly worded and non-specific.  Single entries cover as much as 16 hours of work yet provide only a brief description of the tasks completed during that time.  *See* Fee Decl. Ex. 2.  The time records also contain instances of block billing.  *See id.*  As to many time entries, the Court therefore cannot meaningfully assess whether it was reasonable, or excessive, to work the number of hours reported on the task or tasks described.[2]

---

[2] The Court appreciates Mr. Lee's submission dated September 5, 2014.  That letter helpfully clarified the basis for his March 14, 2013 time entry, about which the Court had inquired during the fairness hearing.  The Court does not doubt that Mr. Lee worked the hours listed that day.  However, the Court continues to question the necessity of spending almost six hours revising a three-page letter.

The Court's judgment is that, to account for these deficiencies, it is fair to discount the aggregate hours Mr. Lee worked by 25%. *See Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (upholding 20% reduction in fee award because of "vagueness, inconsistencies, and other deficiencies in the billing records," including block billing); *Abeyta v. City of New York*, No. 12 Civ. 5623 (KBF), 2014 WL 929838, at *5 (S.D.N.Y. Mar. 7, 2014) ("[G]iven the vague nature of certain entries in the spreadsheet documenting the hours worked by defendants' counsel, the Court hereby decreases the total number of hours for which compensation is sought by 10%."); *Wise v. Kelly*, 620 F. Supp. 2d 435, 452 (S.D.N.Y. 2008) (reducing fees by 25% because certain entries were too vague to enable the court to assess their reasonableness).

Based on this analysis of the billing records, the Court estimates that the proper lodestar figure is $114,683.75.[3]  Although that figure is instructive, it does not end the analysis.  The Court next considered the six factors set forth in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000) to determine a reasonable fee award.  Those factors are "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* at 50 (citations omitted).

### 1.    The time and labor expended by counsel

Class counsel took or defended six depositions; communicated regularly with the named and opt-in plaintiffs; reviewed and analyzed thousands of pages of documents and data produced by defendants; attended 18 hours of in-person mediation; and engaged in extensive additional

---

[3] Mr. Lee's time records list 324.7 hours of work.  Reduced by 25%, the Court credits Mr. Lee for 243.5 hours.  With half of that time (121.75 hours) billed at $400 per hour, and half billed at $175 per hour, Mr. Lee's hours are worth $70,006.25.  Adding that sum to the amounts billed for one counsel, two associates, and two paralegals produces a total of $114,683.75.

settlement negotiations.  To accomplish these tasks, class counsel billed more than 464 attorney hours and 74 paraprofessional hours; even reducing the hours attributable to Mr. Lee by one-quarter, class counsel still billed 382.8 hours.  Therefore, even taking into account the Court's concerns about particular time entries, articulated above, it is apparent that class counsel expended considerable time and effort on this case.

### 2.     The magnitude and complexity of the litigation

As previously mentioned, the case involved a total of 4,119 class members—a significant number.  Each class member had a relatively small individual claim.  And, as noted, these "gap-time" claims were challenging to establish.  Class counsel deserves credit both for vigorously pursuing (under both federal and state law) and for ultimately vindicating these claims.

### 3.     The risk of the litigation

The Court has already addressed the risk of litigation in reviewing the reasonableness of the settlement.  As noted, there was a substantial risk that this lawsuit would end in failure, with plaintiffs' counsel losing his considerable investment of time and expenses including the costs of depositions, court filings, and mediation, and the salaries of junior staff.  This case is thus one in which a meaningful reward for plaintiffs' counsel is merited to reflect the risks inherent in taking on a contingent-fee arrangement.  A meaningful recovery is also merited here to assure that plaintiffs' counsel are not deterred from taking on idiosyncratic FLSA and NYLL cases, like this one, that present a relatively low probability of success.

### 4.     Quality of the representation

"Gap-time" claims are difficult to prove, and this case was hard fought.  Through estimable counsel, Pret vigorously defended the case, including at the conditional certification stage, which gave rise to more substantial litigation than is common.  The Court's considered

judgment is that plaintiffs' counsel provided capable and energetic representation, made all the more impressive given the quality and vigor of the defense. That no class member has objected to the proposed attorneys' fees supplies some confirmation of the quality of plaintiffs' counsel's performance. That said, as noted earlier, the notice that plaintiffs' counsel prepared for class members, although legally adequate, was less than optimal and may have led class members to overestimate their shares of the settlement. In this respect, plaintiffs' counsel was less than fully solicitous of the class' interests.

### 5. The requested fee in relation to the settlement

The fee requested in this case represents one-third of the total settlement amount. Although awarding fees of 33% is common in this district, *see deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440 (DAB), 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010) (collecting cases), so are awards of lower percentages, and 33% is at the high end of fees approved in civil rights cases, *see, e.g.*, *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 426 (2d Cir. 2010) (affirming an award of 13%); *Cisneros v. Schnipper Restaurant LLC*, No. 13 Civ. 6266 (JMF), 2014 WL 67235, at *2 (S.D.N.Y. Jan.8, 2014) (awarding 25%); *Guzman v. Joesons Auto Parts*, No. 11 Civ. 4543 (ETB), 2013 WL 2898154, at *6 (E.D.N.Y. June 13, 2013) (awarding 25% as to one plaintiff and 20% as to another); *Ayers v. SGS Control Servs., Inc.*, No. 03 Civ. 9078 (RMB), 2008 WL 4185813, at *8 (S.D.N.Y. Sept. 9, 2008) (awarding 19%) *aff'd in relevant part*, 353 F. App'x 466 (2d Cir. 2009). In light of the relatively modest recovery obtained, the deficiencies in the notice provided, and the Court's lower assessment of the lodestar, the Court's judgment is that an appropriate fee ought reflect a lower percentage of the settlement fund, while

remaining large enough to reward plaintiffs' counsel for the recovery obtained for the class and to incent counsel to take on similar lawsuits in the future.

### 6.      Public policy considerations

Finally, the Court must consider the public policy implications of this award.  The FLSA and NYLL are remedial statutes designed to protect employees from unfair labor practices. Plaintiffs' counsel's role as private attorneys general is key to the effective enforcement of these statutes.  Accordingly, the Court must adequately compensate counsel for their efforts.  On the other side of the ledger, however, the Court is tasked with guarding the rights of absent class members, and at the fee stage, the Court is the only entity to play that role.  *See Trief*, 840 F. Supp. at 282.

Based on all of these considerations, the Court awards $209,246 in attorneys' fees.  That figure reflects 25% of the net settlement amount, after the deduction of the service awards, administration fees, and costs approved here.  Using the lodestar figure calculated by the Court, this award represents a multiplier of 1.82, giving class counsel ample credit for the effort and risk involved in this case.

### CONCLUSION

For the foregoing reasons, the Court certifies the class and approves the proposed settlement agreement, subject to the modifications enumerated above.  Plaintiffs are directed to file a proposed order consistent with this opinion by September 26, 2014.

The Clerk of Court is respectfully directed to terminate the pending motions at docket numbers 125, 128, and 130.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: September 19, 2014
       New York, New York